1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
2

3    * * * * * * * * * * * * * * *    )
     UNITED STATES OF AMERICA,        )    Civil Action
4                                     )    No. 21-1633
                    Plaintiff,        )
5                                     )
        vs.                           )
6                                     )
     AON, PLC, et al.,                )    Washington, DC
7                                     )    July 15, 2021
                    Defendants.       )    2:59 p.m.
8                                     )
     * * * * * * * * * * * * * * *    )
9

10
                 TRANSCRIPT OF TELEPHONIC MOTION HEARING
11               BEFORE THE HONORABLE REGGIE B. WALTON,
                      UNITED STATES DISTRICT JUDGE
12

13
     APPEARANCES:
14

15   FOR THE PLAINTIFF:      WILLIAM H. JONES, II, ESQ.
                             UNITED STATES DEPARTMENT OF
16                              JUSTICE
                             Antitrust Division
17                           450 Fifth Street, Northwest
                             Room 4000
18                           Washington, DC 20001

19   FOR THE DEFENDANT       DANIEL M. WALL, ESQ.
             AON, PLC:       LATHAM & WATKINS, LLP
20                           505 Montgomery Street
                             Suite 2000
21                           San Francisco, California 94111

22                           EDWARD M. WILLIAMSON, ESQ.
                             LAWRENCE E. BUTERMAN, ESQ.
23                           LATHAM & WATKINS, LLP
                             555 11th Street, Northwest
24                           Suite 1100
                             Washington, DC 20004
25

```
 1      APPEARANCES, CONT'D:

 2      FOR THE DEFENDANT        CLIFFORD H. ARONSON, ESQ.
        WILLIS TOWERS WATSON:    KAREN H. LENT, ESQ.
 3                               SKADDEN, ARPS, SLATE, MEAGHER &
                                   FLOM, LLP
 4                               4 Times Square
                                 New York, New York, 10036
 5

 6      REPORTED BY:             LISA EDWARDS, RDR, CRR
                                 Official Court Reporter
 7                               United States District Court for the
                                   District of Columbia
 8                               333 Constitution Avenue, NW
                                 Room 6706
 9                               Washington, DC 20001
                                 (202) 354-3269
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    THE COURT:  Good afternoon.

 2                    MR. JONES:  Good afternoon.

 3                    MR. WALL:  Good afternoon.

 4                    THE COURTROOM DEPUTY:  Good afternoon, your Honor.

 5      We're ready to get started.

 6                    THE COURT:  Okay.

 7                    THE COURTROOM DEPUTY:  This is In Re:  United

 8      States versus AON (PLC), Civil Action No. 21-1633.

 9                    I'd ask the parties to identify yourselves for the

10      record, please.

11                    MR. JONES:  Your Honor, Bill Jones on behalf of

12      the United States.  Good afternoon.

13                    THE COURT:  Good afternoon.

14                    MR. WALL:  Good afternoon, your Honor.  Dan Wall

15      of Latham & Watkins for AON.

16                    THE COURT:  Good afternoon.

17                    MR. ARONSON:  Good afternoon.  This is Clifford

18      Aronson of Skadden, Arps for Willis Towers Watson, along

19      with Karen Lent.

20                    THE COURT:  Good afternoon.

21                    As I understand, there are four outstanding

22      disputes regarding the scheduling order that I need to

23      address.  Is that right?

24                    MR. JONES:  Yes, your Honor.  Bill Jones for the

25      United States.  Yes, your Honor.  That is correct.
```

1          THE COURT:  The first being the parties' dispute

2    regarding the timing of the production of the investigation

3    materials.

4          I'll hear from Plaintiff's counsel, Government

5    counsel, regarding why your position should be adopted by

6    the Court.

7          MR. JONES:  Yes, sir, your Honor.  Bill Jones for

8    the United States.

9          Your Honor, our position here has consistently

10   been to ensure that nonparties have a chance here to seek

11   additional protections from the Court if they feel they need

12   to before their information goes to the Defendants.

13         Under our proposal, given the timing of the

14   protective order and notes given out under the protective

15   order, the investigation materials here would be produced no

16   later than July 26th.

17         Under Defendants' proposal, if the case management

18   order is entered today, the investigation material would be

19   produced on July 20th.  And this is both in the cases of

20   nonparties that don't seek additional protections.

21         Your Honor, we took great pains once the

22   protective order was entered to send out notice to

23   nonparties quickly.  The protective order was entered on

24   Friday, July 9th.  By Monday, July 12th, end of day, we had

25   notified approximately 280 nonparties.  So we moved quickly

1    to get that done.

2          And because of that, your Honor, the clock has

3    started for those nonparties to seek any additional

4    protection.  They have seven days under the protective

5    order.  So by my count, that means the end of the day on the

6    19th.  So effectively we would know by the morning of the

7    20th the universe of materials that we would need to produce

8    out to Defendants.

9          We can move quickly and our IT folks can move

10   quickly to get that material to Defendants once we know the

11   universe of materials.  But we can't be in a position, your

12   Honor, to get that out the very same day learning on the

13   morning of the 20th the universe of materials that has to go

14   out.  Then being able to do that on the same day is a little

15   beyond our capabilities.

16         So we ask the Court for five business days to get

17   those done.  We would endeavor to do it faster, just as we

18   endeavored to get notice of the protective order out faster

19   than required under the order itself.  But, your Honor, we

20   just need a little time once we know the universe of

21   materials to go to the Defendants to actually technically

22   get that ready and get that done.

23         THE COURT:  Okay.  Let me hear the Defendants'

24   position.

25         MR. WALL:  Thank you, your Honor.  This is Dan

```
1     Wall.  I'll be speaking on behalf of both Defendants.

2              The first and most important point, your Honor, is

3     Defendants' outside counsel always get this material.  So

4     the only exception that I've ever heard of in 40 years of

5     practice is when there are national security materials that

6     require somebody to have a clearance.  Otherwise,

7     Defendants' outside counsel always gets these materials.

8     There's never been an instance in which any third party

9     objected to a protective order in a way that denied the

10    Defendants' outside counsel the materials.

11             So what everyone thinks about the rights of the

12    third parties and how they should be protected here, let's

13    be clear that those aren't going to trump our ability as

14    outside counsel to get these materials, which is why we have

15    been saying from the day that this case was filed on June 16

16    that we should receive these materials immediately; and we

17    would hold them on an outside-counsel-only basis and subject

18    to the -- and, in addition, subject to the terms of any

19    protective order that the DOJ had proposed, even before we

20    had agreed to it.

21             And the reason for that is obvious, is there's

22    very little time to get this case ready.  And the outside

23    counsel can be productively working on these documents while

24    in parallel any issues about protective orders, including

25    any objections from third parties, can be worked out.
```

1          Respectfully, that should have been the end of it.

2     The Division should have sent us those materials

3     immediately, and we could have had all of these other

4     arguments along the way.

5          But now here we are.  We're a full month into this

6     case now, and we don't have these materials.  Normally, we

7     would have had them a couple of weeks ago.  That's the

8     normal timeline in which we start getting these materials on

9     an outside-counsel-only basis.

10          And instead, we're continuing to get this argument

11     that we can't do it because we have to have the process with

12     these third parties completed before they can even start to

13     have their IT people do this work.  It's just -- it's not

14     correct.  That's not reasonable.  That isn't fair.  It isn't

15     what has happened in other cases.  This material is usually

16     already in the hands of the Defendants a month into the

17     case.

18          And that's why we're asking the Court to just put

19     an end to this and order that it be produced on the

20     outside-counsel basis immediately without any further delay.

21          THE COURT:  Government counsel, your response to

22     the position that this is information that's always produced

23     and, even if there I guess any type of objection and if

24     that's true, then why isn't the Defendants' position

25     correct?

```
 1              MR. JONES:  Sure, your Honor.  Bill Jones for the
 2    United States.
 3              First, your Honor, the position that counsel just
 4    offered to the Court as their position differs from what
 5    they've put in their papers.
 6              In their papers, they asked for production of
 7    these materials within three business days of the entry of
 8    the case management order.
 9              Now here in the hearing, they're asking for
10    immediate production.
11              Secondly, your Honor, normally, the Defendants and
12    the United States in these cases engage in negotiations
13    about a protective order and the case management order and a
14    schedule practically right away.
15              Here, we sent the case management order draft and
16    the protective order draft to the Defendants immediately
17    upon filing the suit within a few hours, the same day, your
18    Honor.  We did that to try to initiate those conversations.
19              The Defendants would not engage with us on any
20    scheduling date conversations other than a conversation
21    about the trial date and about these investigation
22    materials.
23              Had we proceeded in the normal course, your Honor,
24    we would have discussed all of these issues together early
25    on and we would have either reached an agreement or been
```

1    before the Court earlier than this with these issues teed up

2    and resolved and with the ball rolling here.

3         But the Defendants chose a different course.  They

4    chose to file serial motions here.  So here we are.  But,

5    your Honor, we have been consistent here in trying to

6    protect the interests of nonparties.

7         And I would say as well on nonparties objecting to

8    protective orders, your Honor, when AON was a nonparty to

9    lawsuits the United States brought to seek to block mergers

10   in the insurance industry as a nonparty, it moved the Court

11   for additional relief under the protective order.  And, your

12   Honor, in that case, in those cases, the protective order

13   was very similar to this one that we had here.  So it's not

14   unimaginable that there could be nonparties who seek some

15   type of additional relief under the protective order.  It's

16   not something that's unimaginable or outside the realm of

17   possibility.

18        THE COURT:  Well, as I was saying, the protective

19   order now has been agreed to.  Right?

20        MR. JONES:  Yes, sir.  Bill Jones again.  Yes,

21   sir.  It has been.

22        And under --

23        THE COURT:  So why, with that having being done,

24   why isn't the position that the Defendants take about

25   immediate production appropriate?

1          MR. JONES:  Your Honor, Bill Jones again.

2          The protective order is in place.  Under the terms

3     of the order itself, nonparties get a total of seven days to

4     seek any additional protections from the Court under the

5     protective order.  That seven days by our count expires on

6     Monday.

7          So at this point, the nonparties who we've

8     notified at least have not yet had their full chance to come

9     to the Court if they have any motions to seek additional

10    protections under the order.

11         So their time to come to you to say, you know,

12    Something isn't right with the order or if they want more

13    protections or something like that hasn't yet expired.  It

14    will expire on Monday night at 11:59 Eastern time, your

15    Honor.

16         THE COURT:  So are you taking exception with

17    opposing counsel's position that all of this information

18    they acquire normally in any event, obviously, in

19    conjunction with the protective order?

20         MR. JONES:  Your Honor, I'm taking exception to

21    the notion that these materials go out alone without being

22    part of a broader discussion, often a broader agreement,

23    even, on the other aspects of the case as embodied in the

24    case management order and scheduling order.

25         There may be rare exceptions, your Honor.  But

1    most times these documents, the case management or the

2    scheduling order, the protective order and the rolling-out

3    of the investigative materials are tied together.  They're

4    joined, your Honor.  So I'm taking some issue with the

5    expression of "normal" here.

6              THE COURT:  Well, does the Government's

7    representation that this case has not resulted in the type

8    of agreement that always occurs or at least normally occurs

9    and therefore as a result of that makes this case

10    distinctive from what you indicate?

11              MR. JONES:  Your Honor, Bill Jones again.

12              What we see typically is that the conversation,

13    the negotiations, are together or at least in parallel for

14    these different documents and these different aspects of the

15    case.  So I hesitate to say "never" or "always" here.

16              But fairly typically, your Honor, these documents

17    are in parallel so that once a protective order is entered,

18    a case management order is close by, either at the same

19    time, maybe a few days after, maybe a few days before.  But

20    it's in close time proximity governing the production of the

21    investigation materials.

22              THE COURT:  But I guess where I'm having some

23    difficulty is, I thought that defense counsel was indicating

24    that normally this information or even always this

25    information ends up being produced even if there is an

 1    objection.

 2            If in fact now there is a protective order in

 3    play, then what's the problem with immediate production if

 4    they're not going to in some way be able to use this

 5    information contrary to the protective order?  And therefore

 6    I guess it's being suggested that that adequately protects

 7    the interests of the third parties regardless of what

 8    position they take as far as the additional protections they

 9    say they need.

10            MR. JONES:  Your Honor, Bill Jones again for the

11    United States.

12            Your Honor, what I'm hesitating to try to do here

13    is put myself in the shoes of all of the roughly 280

14    nonparties to whom we've sent out the protective order.

15            I assume that frankly most of them will not have

16    any objection or seek any greater protection for their

17    materials.  I don't know if that will be the case

18    universally.  And I'm hesitant to say that because at the

19    end of the day, it is their material, not ours.  So I'm

20    hesitant to kind of make a blanket claim here about what the

21    nonparties will do faced with the prospect of their

22    confidential information being used in this case.

23            THE COURT:  Well, in light of the deadline that

24    you say is going to be on Monday for them to raise

25    objections, why can't the materials be prepared to be

1    produced at that point?  And then to the extent that there

2    are objections, if there are, and it's felt that that

3    information can't be produced, that that not be produced?  I

4    mean, I guess my point is:  If there aren't any objections,

5    then why can't you be preparing now to immediately release

6    the information as soon as that period expires?

7              MR. JONES:  Your Honor, Bill Jones again.

8              We are preparing, your Honor.  We're doing the

9    steps that we can do in advance of knowing what material is

10    loaded onto the electronic media versus what material gets

11    held back, if any, because a nonparty has sought additional

12    protections.

13              We are taking those steps now.  And we will know

14    the full universe of what we have to send over by Tuesday

15    morning, opening of business Tuesday morning.  And we will

16    work quickly to turn that over to the Defendants.  We just

17    won't be capable technically of doing it that same day after

18    we learn what the universe actually is.

19              MR. WALL:  Your Honor, this is Dan Wall.

20              May I make a couple of comments, please?

21              THE COURT:  Yes.

22              MR. WALL:  So first of all, there is nothing in

23    the protective order, there's nothing that is structured in

24    such a way that anybody's objections or requests for

25    modifications have to be resolved or heard before we get

1    information.

2         But I want to emphasize that what we said a month

3    ago to the DOJ is that we as outside counsel are going to

4    get this information no matter what.  Mr. Jones has never

5    answered your question about that or contradicted us.  We

6    are going to get it no matter what.

7         And therefore, we can receive it with a promise to

8    keep it entirely on an outside-counsel basis until such time

9    as everything is -- works out.

10        And remember, we don't have any reason to file

11   anything right now anyway.  What we have urgent need for is

12   to study it and to create a discovery plan.

13        Under the agreed parts of the case management

14   order, the entire discovery period in this case is going to

15   be two and a half months long.  It opens today; it closes

16   October 1.  That's all the time we have.  And reading this

17   file on our own as outside counsel to decide how we use that

18   two and a half months is the most important thing that we

19   have to do right now.

20        And I just want to put this in context:  In

21   connection with one of the motions we filed earlier, we

22   provided your Honor a copy of the case management order that

23   had been entered into a very similar case, the *Oracle* case.

24   And I have that case management order open in front of me.

25   And it says that the disclosures that the DOJ needed to

1      make, which included copies of documents and so forth, shall

2      be completed within five days of the entry of the order.

3      Five days within the entry of the order.  That's how much

4      time they were given to do that in a very, very comparable

5      case.

6              We are 30 days into this case now.  And counsel

7      doesn't want to have to produce these for another ten days.

8      It's just too much.  This is our time that is being eaten up

9      by these various reasons and excuses, none of which have

10     anything to do with whether outside counsel can see these

11     materials.

12             THE COURT:  Government counsel, you haven't

13     responded to that representation that defense counsel or

14     outside counsel made that, regardless of whether there are

15     objections or not, they're going to get this information.

16     If that is, in fact, correct, then I guess I'm having some

17     problems in understanding why immediate production would not

18     be appropriate.

19             MR. JONES:  Your Honor, Bill Jones for the United

20     States.

21             Your Honor, I would say here that obviously we

22     don't see a circumstance in which the nonparty information

23     would not go to outside counsel.

24             But, your Honor, I can say again, it's not our

25     information.  It's not our place to say here.  And I would

1    point out as an example of a type of modification a nonparty

2    might seek a protective order here is they might seek some

3    type of modification, for example, of asking for some notice

4    before their confidential materials went from outside

5    counsel to, say, any retained experts.  They might ask for

6    some short period of notice before that happened or seek the

7    identity of the outside expert before that happened.  That

8    might be a type of modification that a nonparty might seek,

9    for example, that would be something a little different

10   here.

11          But, your Honor, the bottom line for us is, I

12   certainly agree that I can't see a circumstance in which it

13   might happen that a nonparty's information wouldn't go to

14   outside counsel.  But I also am hesitant here and unable

15   here, actually, your Honor, to speak for the nonparties on

16   this front.

17          THE COURT:  Well, I mean, it just seems to me that

18   it's highly unlikely that an objection is going to be raised

19   by a third party that's going to inhibit or prohibit the

20   information from being disclosed to outside counsel.

21          So what I'm going to order is, since the time

22   limit for the notice occurs on Monday morning, I think you

23   said, I'm going to require by the end of the day at 5:00 on

24   Monday that the information be disclosed.  By then, you

25   would know if there is an objection that would in some way

1    be unique and would therefore preclude outside counsel from

2    receiving the information.  It doesn't seem like that's

3    probably going to be the case, based upon what I'm hearing.

4    But in the event there's the unusual situation where that

5    does occur, then obviously you can let outside counsel know.

6    Let me know.  And then we can immediately address that issue

7    on Tuesday.

8              But under the circumstances, it seems to me if the

9    norm is this information is, in fact, immediately made

10   available to outside counsel -- and again, I'm having a hard

11   time based on what's been represented to me concluding that

12   there's going to be some basis that would preclude outside

13   counsel from being able to acquire the information -- it

14   just seems to me under those circumstances by the end of the

15   day Monday it should be produced.

16             If, as I say, the rare instance occurs where there

17   is some type of objection raised for a third-party

18   protection and as a result of that Government counsel

19   believes that the information can't be produced, you can

20   let, again, outside counsel know immediately.  Let me know

21   immediately.  And then we can try and resolve it as quickly

22   as possible, probably on Tuesday.

23             MR. JONES:  Your Honor, Bill Jones for the United

24   States.

25             If I may, your Honor, the nonparties as we look at

1    the rule for counting a day under Rule 6 would actually have

2    until midnight effectively on Monday.  Could I request

3    respectfully --

4              THE COURT:  That's fine.  Then I'll make it by the

5    end of the day on Tuesday.  5:00.

6              MR. JONES:  Thank you, your Honor.

7              THE COURT:  Anything else on that issue?

8              MR. WALL:  No, your Honor.  Thank you.

9              THE COURT:  The second issue relates to the

10   dispute that the parties have regarding the Defendants'

11   special interrogatories.

12             I'll hear from Government counsel, I guess, first,

13   if that's appropriate on this question.

14             MR. JONES:  Thank you, your Honor.  Bill Jones for

15   the United States.

16             Your Honor, with this second dispute, it involves

17   so-called special interrogatories that the Defendants have

18   sent to us, your Honor.

19             We proposed language in the case management order

20   that would govern our responses to the interrogatories that

21   tracks the language of Rule 33 that calls for us to provide

22   answers and objections to their interrogatories by the

23   deadline or responding.

24             The Defendants here on the other hand seek to

25   import some language into the case management order calling

1    for, quote, "substantive responses," end quote.  That's

2    nowhere to be found in Rule 33 itself.  And it is an

3    undefined term and is loaded with the possibility of

4    misinterpretation and disagreement about what it actually

5    means.

6            And on top of that, your Honor, they're seeking to

7    embed the term "substantive responses" into the CMO in a way

8    that would effectively strip us of our ability to lodge any

9    appropriate objections to those interrogatories as we would

10   normally be allowed to do both under Rule 33 and the process

11   that we and Defendants have agreed to to govern other

12   interrogatories in this case.

13           So again, this is getting around the normal rules.

14   Normally, your Honor, we would have a chance to send our

15   answers and objections to the Defendants.  We would meet and

16   confer if they thought our answers were deficient or if our

17   objections were not well-founded.  And if we couldn't

18   resolve that in the meet-and-confer process, they could move

19   to compel and they could show the Court our actual answers

20   that they thought were insufficient and our actual

21   objections that they thought were unfounded.

22           But here, your Honor, by putting this new term,

23   ambiguous term, into the case management order, they're

24   effectively circumventing that entire process and are

25   seeking really to get the Court to rule on something that is

1    not ripe, on answers and objections that haven't been given

2    to them yet.

3         Your Honor, we recognize their desire to get the

4    answers and objections to their interrogatories quickly.

5    And so in that light, we've proposed as a compromise that we

6    send our answers and objections to them on July 29th, two

7    weeks from today, as a way to move more quickly than both

8    required under Rule 33 and under the rule that we've agreed

9    to in this case to govern interrogatories to get the

10   information faster, but still preserving our rights to

11   provide answers and objections where objections are

12   appropriate.

13        THE COURT:  Opposing counsel, why should I not

14   agree with the Government's position on this?

15        MR. WALL:  Thank you, your Honor.  Dan Wall again.

16        So, first of all, let me be very clear about what

17   can possibly be at issue here:  The Division is going to

18   have to answer these interrogatories.  There's no if's,

19   and's or but's about that.  There is simply no good-faith

20   argument that they don't have to tell us things like who is

21   in the market, who is not, why are firms that are currently

22   providing brokerage services to large customers not in the

23   market, what are the relevant market shares, what are the

24   objective factors that define the relevant markets.  So

25   these are -- our interrogatories are fundamental basic

1   building blocks.

2          It would be impossible for the Department of

3   Justice to have decided to bring this case without having

4   formed conclusions about those basic things.  And normally,

5   they would have been in the complaint.  And for reasons that

6   no one knows, they're not in this complaint.

7          I mean, so what we did --

8          THE COURT:  I don't mean to interrupt.  But

9   shouldn't it be the position in any case where a Plaintiff

10  has brought a suit that they would know the answers to the

11  matters that you're referencing?

12         MR. WALL:  Yes.  I agree with you completely.

13         THE COURT:  So if that's true, do you disagree

14  with the Government's representations that you're asking

15  that what otherwise would be compliance with Rule 33, which

16  should not apply here?

17         MR. WALL:  Well, of course.  Yes.  I do agree with

18  that.

19         I mean, we don't do things in merger litigation in

20  the normal way on the normal timelines.  Your Honor is about

21  to enter a case management order that provides for two and a

22  half months of discovery.  That is not normal.  The federal

23  rules do not set deadlines, you know, answering deadlines

24  and motion-to-compel processes and things like that based on

25  the assumption that the parties are going to start and

1    complete discovery in two and a half months.

2         So it is in fact the norm in merger litigation

3    that deadlines get adjusted; things get changed.

4         And once again, we are asking for precisely what

5    was ordered in the very similar *Oracle* litigation where the

6    judge gave the DOJ five days to answer the same basic set of

7    interrogatories.  We can use that as our model and craft

8    these just obviously to make them appropriate to this case.

9    DOJ answered them in five days successfully.  There wasn't a

10   motion to compel.  There wasn't all of these other

11   processes.  Instead, what happened is -- I was representing

12   Oracle in that case.  We took that information and we used

13   it to frame discovery and we went forward.

14        The only reason that this is even before you right

15   now is because the Government is saying -- very

16   transparently; I credit them for that -- that they don't

17   intend to provide substantive answers on the 29th, but

18   rather they intend to make objections which then we have to

19   work out.  So what they want to be the normal process, not

20   the process of a two-and-a-half-month discovery calendar,

21   but the normal process for an antitrust case that might be

22   in discovery for two years.

23        And we don't have time for that.  And that's why

24   we are in fact asking for leave from the ordinary course.

25        Now, I do want to emphasize one other thing, your

1    Honor, that, you know, because of the fact that we had

2    proposed this -- we proposed this and sent them the

3    interrogatories that we want answered back on the 22nd of

4    June, so a week after the case was filed.

5            Since then, we filed a motion on this.  We had a

6    meet-and-confer about that.  Your Honor at the last hearing

7    told us to try to work this out.  And so we went back again

8    and tried to work it out.  And in that process, in all of

9    that process, the Department has not identified a single one

10   of these interrogatories that they tell us they think is

11   objectionable in the sense that they wouldn't have to

12   provide an answer.  Not a one.

13           And I think that's because they recognize that

14   these are so basic.  And the information is common.

15           At the last hearing, Mr. Jones brought up this

16   interrogatory about what are called diversion ratios.

17   Diversion ratios are one of the most fundamental things in

18   the Department's approach to cases like this.  And we were

19   told weeks ago during the process prior to litigation that

20   they had calculated diversion ratios.  So we're simply

21   asking them:  What are those calculations?

22           So what our issue is, your Honor, is once again,

23   what's happening here is they want to put a bunch of process

24   in front of giving us information that we should have now so

25   that we can use the two and a half months that are allowed

24

1    to us effectively.

2              THE COURT:  Government counsel, do you anticipate

3    that there are going to be any objections to these

4    interrogatories?

5              MR. JONES:  Your Honor, there will be some

6    objections where we think objections are appropriate.  There

7    will be answers to some along with objections as well.

8              So we think as we work through these that there

9    will be some objections, your Honor, particularly ones where

10   we think the Defendants are seeking expert discovery

11   prematurely.  Certainly we would anticipate objections

12   there.

13             But for most of their interrogatories, these

14   special interrogatories, your Honor, we would anticipate

15   providing answers where we can and answers and objections

16   where appropriate.

17             But, your Honor, I would just like to address a

18   point that defense counsel made here about things that are

19   normally in merger complaints.

20             Your Honor, there is no "normally" in merger

21   complaints.  Some complaints in merger cases do have precise

22   market shares and precise measures of concentration.  Some

23   of them do not, your Honor.  We went through this with

24   defense counsel in our papers in response to their motion

25   for the special interrogatories.

1                There is a case -- there are cases where those

2       figures are in some complaints.  There are other cases where

3       they're not.  So it's not the case that they're normally in

4       complaints.

5                And, your Honor, I would also like to point out

6       here, Defendants talk about needing this information based

7       on what we've said in our complaint.

8                There were avenues that they could have chosen to

9       get information about our complaint.  They could have filed

10      a motion under Rule 12(e) for more definite statement.  If

11      they thought it was impermissibly vague, your Honor, they

12      could have filed a 12(b)(6) motion.  But instead of taking

13      those normal routes, they've come up with this special

14      interrogatories route, your Honor, which is very rare, as

15      evidenced in large part by the fact that the case the

16      Defendants used to support the notion of these special

17      interrogatories is a 2004 case from San Francisco.

18               So, your Honor, this notion here that what they're

19      doing is normal, that it's routine somehow, that's not true.

20      If it were true, your Honor, we would expect to see this

21      approach taken in a lot more cases than the 2004 *Oracle*

22      case.

23               So, your Honor, all we're asking here ultimately

24      is a chance to write our answers and our objections.  If

25      then upon actually having those the Defendants think that

1    the answers are insufficient or the objections are not

2    well-founded, they can come to you and they can show you in

3    writing concrete samples of where they think we've fallen

4    short.

5           But here, your Honor, they're basically asking you

6    to make a ruling on an abstraction.  That's what they're

7    asking you, your Honor.

8           And we're asking simply for a chance as any other

9    litigant would have under the federal rules to lodge

10   objections to interrogatories where appropriate and to

11   provide answers where we can.

12          THE COURT:  Well, defense counsel says that in the

13   *Oracle* case that with this same request the Government was

14   able to comply with it within five days.

15          What distinguishes this -- despite the fact that

16   this was back in 2004, what distinguishes this case from

17   *Oracle*?

18          MR. JONES:  Well, your Honor, unlike defense

19   counsel, I was not involved in the *Oracle* case.

20          But, your Honor, I would say first, we're talking

21   about a case involving different products, different types

22   of allegations.  Your Honor, since the *Oracle* case was

23   decided in 2004, there have been many cases in this district

24   that have market definition allegations that are similar to

25   the ones that we have in our complaint here, your Honor.

1          So what may have been something considered or

2    looked upon as a unique type of allegation for market

3    definition in the *Oracle* case is no longer so based on a

4    series of cases in this district.

5          So that's one really distinguishing factor here,

6    your Honor, that I would point to as to why *Oracle* is

7    different.

8          And ultimately, your Honor, we're just seeking a

9    chance here to do the normal course of answering these

10   interrogatories.  And we agree with defense counsel that we

11   will answer those interrogatories that we can, but that we

12   should also not be forced through the case management order

13   to waive any type of work-product claims that we have or be

14   forced to prematurely provide expert discovery to Defendants

15   that they are not yet entitled to get.

16          THE COURT:  So are you saying that you would be

17   able to provide what defense counsel's requesting by the

18   29th?

19          MR. JONES:  Your Honor, we would not be able to if

20   the terminology is "substantive responses," because I don't

21   know what that means.  I suspect, your Honor, that no matter

22   what we say, the defense will claim it's not substantive.

23          We can and will provide answers to those

24   interrogatories that we can answer along with objections.

25   And we can do that by the 29th.  Answers that we think will

1   be robust answers once we can really put them together.  And

2   if Defendants disagree, obviously, we can go forward from

3   there.

4           But we do think we can put together answers and

5   objections as the language of the rule really calls for by

6   the 29th.

7           THE COURT:  Let me ask defense counsel, are you

8   suggesting by the use of the term "substantive" that the

9   Government could not otherwise respond to the

10  interrogatories as they would in the normal situation and,

11  to the extent that they had reasons as to why they think a

12  response was not appropriate, they couldn't do that, since

13  you're saying that they substantively have to respond?

14          MR. WALL:  So sort of, yes, but with a bit of an

15  explanation, your Honor.  This is Dan Wall again.

16          The reason we proposed the actual interrogatories

17  was so that we could work this out immediately.  And it's

18  very frustrating that after two meet-and-confers we're still

19  being told that we might have some objections, but nobody

20  will say what they are.

21          I mean, we appreciate -- I hope that there aren't

22  any motions to compel.  There weren't in *Oracle*.  We got the

23  answers and we moved forward.  We are entitled to such

24  information as they have now.  And that's what we mean by

25  "substantive."  We don't -- it's not this tricky term of

1    art.  It just means actual answers consistent with the

2    mandate of Rule 33, which has plenty of guidance in it.

3          This whole process, your Honor, was intended to

4    avoid precisely what Mr. Jones is asking you to permit,

5    which is:  It is an unnecessary round occurring somewhere in

6    late July or early August of process about whether we should

7    get these answers when we were very careful to frame

8    interrogatories to which no one can have a reasonable

9    objection, because they're so basic.

10         So respectfully, counsel's just talking around

11   your Honor's questions.  They should answer the

12   interrogatories.  If their answers are inadequate, maybe

13   we'll have to do something about it.  But if they give the

14   answers that they are able to give now -- that's what we

15   mean by "substantive" -- then we are far more likely, given

16   the time that we have, to just take them and run on to the

17   next process in discovery.

18         THE COURT:  Well, again, I guess I can appreciate

19   the concern about the use of a term that's not in the rules

20   and the input that conceivably that could have.  You've got

21   to clarify what you meant in reference to the insertion of

22   that term.

23         But it seems to me that I should not in some way

24   put a restriction on what the Government can do in response

25   to its responses to the interrogatories outside of the norm

1    of what otherwise they would be able to do in any type of

2    other litigation consistent with Rule 33.

3            So what I will do is I'll order that by the 26th

4    of the month that the Government respond to the

5    interrogatories consistent with what Rule 33 envisions in

6    reference to such responses.

7            MR. WALL:  Your Honor, this is Dan Wall again.

8            That's fine.  If I may, just -- because we

9    certainly do not intend to create uncertainty or any

10    additional obligation by the use of the word "substantive."

11            Rule 33(d)(3), which is entitled Answering Each

12    Interrogatory, says, quote:  "Each interrogatory must to the

13    extent it is not objected to be answered separately and

14    fully in writing under oath," end quote.

15            The distinction there is simply between an

16    objection on the one hand and an answer on the other hand.

17            For the record --

18            THE COURT:  Okay.

19            MR. WALL:  -- all we want is the answers.  We

20    would like to have an answer.

21            THE COURT:  My ruling is that they have to respond

22    to the interrogatories consistent with what's envisioned by

23    Rule 33.  And I'll require that those answers be provided by

24    the end of the day on the 26th.

25            MR. JONES:  Thank you, your Honor.

```
1              THE COURT:  The third matter?

2              MR. WALL:  Your Honor, this is Dan Wall again.

3              The third matter is -- these two matters are

4    smaller, fortunately.  This is kind of an unusual issue.  It

5    has to do with the three markets that really aren't in

6    dispute, because there are already divestitures in place.

7    And they for the record are:  actuarial services for large

8    single-employer defined benefit pension plans, which is

9    Count 3 of the complaint; private multicarrier retiree

10   exchanges, which is Count 4; and reinsurance brokering,

11   which is Count 5.

12             With those three markets, the parties have already

13   put in place binding agreements with identified buyers to

14   fully divest one or the other party's business in that area.

15   So it takes those off the table.  Indeed, we were confused

16   why the DOJ even included them in the complaint.

17             But Paragraph 74 of the complaint actually

18   acknowledges that the divestitures satisfactorily deal with

19   those issues provided that they are in a consent decree.  So

20   DOJ's only position was it wants it in the form of a consent

21   decree.  But substantively, they're fine.

22             I would also just tell your Honor DOJ has known

23   about those remedies for months.  It's already seen the

24   agreement.  It's interviewed the buyers.  There was a

25   separate process in that -- again, for reasons that I can't
```

1  explain, they threw those three markets in the complaint

2  anyway.

3          As a result of those agreements, there in

4  substance is no merger with respect to those three markets.

5  They're conditional agreements.  If the big deal closes,

6  those have to take place immediately.  And so the combined

7  firm will not have the combined businesses in those three

8  areas.

9          DOJ nevertheless is proposing this front-loaded

10  process for papering up the consent decree by a process that

11  has very early deadlines, including in August one deadline

12  which it says is necessary because otherwise it's going to

13  need to take discovery into those three markets.

14          But that's where we got into an argument, because

15  that's not true.  They don't need to take discovery into

16  those markets.  We have no intention of litigating to try to

17  avoid those divestitures.  We're only in litigation because

18  of the dispute we have about the other two markets.

19          And I personally assured DOJ in writing a couple

20  of days ago that we have no intention of defending their

21  claims with respect to those three markets on any basis

22  other than the fact we're making the divestitures.  So we're

23  not going to take discovery into those businesses.  There's

24  no reason whatsoever for the Department of Justice to take

25  discovery in those businesses.  They're done.  Other than

1    papering them into a consent decree, they're done.  And if

2    you think about it, all that really needs -- that just needs

3    to be completed by the time of trial, which is in November.

4    There's no urgency to that.

5           Nevertheless, they put forward this schedule that

6    gives it urgency and makes us sort of devote resources

7    immediately to that when frankly we want to devote our

8    resources to other things.

9           So we've told DOJ:  Look, we're willing to work

10   with you on a consent decree.

11          I don't see why it's strictly necessary, since

12   we're not ever going to acquire those assets.  And actually,

13   it's under your Honor's decision some years back in the *FTC*

14   *versus Libbey Glass* case that is very clear that

15   divestitures of this kind change the fact so that the

16   acquisition has to be viewed or the merger has to be viewed

17   in light of that.

18          But regardless, we will do that.  We will work in

19   good faith towards that.  But we just don't want to have

20   that be front-loaded into a process that right now needs to

21   concentrate on the two markets that are in dispute.

22          THE COURT:  Response?  Why is defense counsel's

23   position not correct?

24          MR. JONES:  Well, your Honor, there are actually

25   several problems with it.

1          The first one fundamentally is that the third

2     topic of dispute actually covers two issues.  One is the

3     issue that defense counsel described regarding time for the

4     Defendants and the Plaintiff to determine whether or not a

5     consent decree would be filed on the markets described in

6     Counts 3 through 5 of the complaint.  So that's one issue

7     that's in dispute as part of Dispute No. 3.

8          But the other issue, your Honor, is more broadly a

9     deadline by which evidence of any new remedy proposals must

10    be given by Defendants to the United States before that

11    evidence is considered prejudicial.

12         Your Honor, that's a big issue, because what we

13    want to avoid is the Defendants coming to us on September 1

14    saying:  We have this new remedy proposal for Counts 1 and 2

15    of the complaint.  And it fundamentally changes what you're

16    litigating, DOJ.  But by the way, you only have 30 days left

17    of fact discovery to look at what's now a new transaction

18    that's different from the one you've been conducting fact

19    discovery on up until this day of September 1.

20         That's a concern for us, your Honor.  That's what

21    we want to be deadlined for August 1.

22         So if they come up with something new that changes

23    the dynamics in Count 1 and Count 2, we would have an

24    adequate opportunity to go out and do the necessary fact

25    discovery, the depositions, the document discovery, the data

1    discovery, to look at what they will argue at trial is the

2    true state of the world that your Honor should consider in

3    making its decision.

4         Your Honor --

5         THE COURT:  You're referencing remedy proposals

6    regarding Counts 2, 3 and 4 or 1 and 5?

7         MR. JONES:  Oh, I'm sorry, your Honor.  Let me

8    clarify.  I'm talking about the prospect of remedy proposals

9    on Counts 1 and 2.  That's what we're concerned about the

10   Defendants dropping on us basically with very little time

11   left in fact discovery and tying our hands.

12        Your Honor, already under their proposed calendar,

13   their dates, we would have to put forth a preliminary

14   witness list without knowing if Defendants are going to drop

15   a new remedy proposal on us.  So we will have to make those

16   decisions about who goes on our preliminary witness list

17   without knowing fully what the scope of what we're

18   litigating would be regarding Counts 1 and 2.

19        That's why we think there should be an earlier

20   deadline, an August 2nd deadline, for Defendants to produce

21   any remedy proposals that they would want to be considered

22   at trial.

23        Let's box in what the scope of the dispute is so

24   both sides can go forward and get the discovery they need,

25   put together their cases, for us to put together our case,

1    your Honor, as the party with the burden here to give your

2    Honor a complete record.

3                And, your Honor, I would --

4                THE COURT:  Hold on.  Hold on.

5                I might be missing something.  But are we talking

6    about the same thing?  I thought defense counsel was talking

7    about three other claims.

8                MR. JONES:  So, your Honor --

9                MR. WALL:  Yes.

10               MR. JONES:  -- let me clarify.  Those -- again,

11   Bill Jones for the United States.

12               Within the third topic of dispute -- and perhaps

13   the parties here should have jointly split those out.  But

14   within the third topic of dispute, your Honor, there are two

15   issues.  One issue is the one that defense counsel

16   described, the deadline by which we and the Defendants

17   should inform the Court whether there will be a consent

18   decree on Counts 3 through 5.  That's one issue covered

19   under the third disputed topic.

20               The other issue covered under the third disputed

21   topic, your Honor, is just a deadline for any additional

22   remedy evidence to be offered by the Defendants to attempt

23   to resolve the concerns that the United States has expressed

24   about this merger.

25               So --

```
 1              THE COURT:  And you're talking about Counts 1 and
 2      2?
 3              MR. JONES:  Yes, sir.  That is correct.  Bill
 4      Jones again.
 5              Yes, sir.  So that's what our concern is,
 6      primarily, that we're going to end up getting on September 1
 7      or August 31st some brand-new remedy proposal that goes to
 8      Counts 1 and 2 that are contested here.  That would leave us
 9      with very little time, basically one month left in fact
10      discovery, to go out and to conduct any discovery we need on
11      that newly structured proposal.  And we want to prevent
12      finding ourselves in that situation by moving the deadline
13      to present that type of evidence up until August 2nd.
14              THE COURT:  Defense counsel, your response?  I was
15      a little confused and it seemed to me you were talking about
16      different things and to what extent the claims that you were
17      talking about would have any impact on the claims that the
18      Government's referencing.
19              MR. WALL:  Dan Wall here.
20              Yes.  I'll try to clarify the confusion, although
21      I must say I share it to some extent, your Honor.
22              We have definitely viewed this particular
23      provision as being about the counts that have been resolved.
24      And in all of our papers, you can see that that's what we're
25      talking about.
```

 1          If counsel is talking about the disputed claims,

 2    for example, whether the parties were going to try to sell

 3    off assets in the health and benefits sector to someone

 4    else, you know, one thing I can say with a great deal of

 5    assurance is there's no possibility at all that we are going

 6    to do that by August 1st.  I mean, that's crazy, to think

 7    that we would be in a position to even decide whether we

 8    would be doing something like that by August 1st.  It's not

 9    the plan at the moment.

10          We certainly are open to trying to work this

11    matter out between now and November.  But I can just assure

12    the Court that by August 1st or August 2nd -- if you look at

13    the language, it says "agreements to divest or

14    [indiscernible] assets or make any other agreement, offer or

15    commitment."  That's not going to be in any existence by

16    August 1st.

17          So it's a pointless requirement, if that's what

18    this is about.

19          And that's really all I can say about this.

20          THE COURT:  He seems to be concerned that you're

21    going to spring something on them in reference to the

22    remedies that you're seeking regarding the first two claims

23    and that when you spring it on him, it's going to be too

24    late for them to do the discovery they need to do to meet

25    the challenge.

1          MR. WALL:  Right.  And, look, I think that that is

2     a perfectly reasonable concern.

3          But if we are actually talking now about the

4     disputed counts, I think we have to go back to the drawing

5     board and talk to the DOJ about this because to the extent

6     that that is even a possibility -- and I don't want to

7     speculate about that, your Honor -- it's not something that

8     is going to be happening on the kind of timetable that

9     they're talking about.  There's just no chance.

10          I mean, think about what they're saying.  They're

11     saying that we'd have to be out there having a deal with

12     someone.

13          We don't have a deal with anyone to do that.

14          THE COURT:  Well, I mean, the only thing I can say

15     is, obviously, I can't project what the situation is going

16     to be and whether there's going to be something from their

17     perspective sprung on them that doesn't give them enough

18     time to do the discovery that they need to do in order to

19     adequately address the position that you take.

20          The concern that I have, if we're trying to move

21     this matter along to a final resolution, is in all fairness,

22     I mean, if the Government were able to convince me that what

23     was disclosed to them does not give them enough time to be

24     able to adequately protect whatever position they're taking,

25     then that's obviously going to result probably in a delay in

1    this matter moving forward, because I'm not going to force

2    them -- if something was sprung on them too late for them to

3    adequately prepare, I'm not going to force them to proceed

4    not being in a position to be able to adequately address or

5    present to me what their position is.

6            MR. WALL:  Understood, your Honor.  Dan Wall

7    again.

8            Let me just make two comments.  One, message

9    received.  I fully understand what you're saying.  And I

10   will make sure that AON understands it, that Willis Towers

11   Watson understands it, and we will have to proceed

12   accordingly.  Just remember that right now, we have every

13   intention of defending this case fully with respect to both

14   of these markets.  And so discovery is going to take place

15   with regard to both of these markets.

16           The only possibility that I think the Government

17   is trying to address is if there was some incremental burden

18   to due diligence, a proposed remedy.  And that's so

19   speculative right now, your Honor.  It just doesn't serve

20   any purpose to create this artificial deadline for us to

21   provide information about that.  I have nothing to provide

22   them.

23           MR. JONES:  Your Honor, Bill Jones again.

24           THE COURT:  Yes.

25           MR. JONES:  Bill Jones from the United States, if

```
 1    I may.

 2                 THE COURT:  Yes.

 3                 MR. JONES:  Your Honor, I think defense counsel

 4    has actually put his finger on it.  Your Honor, it would put

 5    us in a position here, a prejudiced position, if they are

 6    able to up until their proposed date of September 1 come up

 7    with some different structure that we would be litigating at

 8    that time, your Honor.  That's our only point here.

 9                 And I hear counsel when he says, you know, "at the

10    moment," you know, that type of language.  Your Honor, our

11    concern is:  What if that changes at some point that's too

12    late for us to get discovery?

13                 THE COURT:  Well, I think I've addressed that.  I

14    think what you all need to do is to go back to the drawing

15    board and see if you all can come up with some mutual

16    acceptable agreement because, as I said, I'm not going to

17    prejudice one side or the other because you don't have

18    enough time to do what you need to do in order to

19    appropriately present your case to me.

20                 So if by chance what you're projecting could occur

21    takes place and something is sprung on you too late for you

22    to adequately prepare to present your position to me, then

23    that's going to delay the ability of the matter to proceed.

24                 So I think it's in the best interest of the

25    Defendants to try and reconcile the concern that you have so
```

 1    that you'll be in a position to conduct the discovery you

 2    need to conduct in order to adequately present your case to

 3    me.

 4                    MR. WALL:  Your Honor, this is Dan Wall again.

 5                    If I may suggest, I would suggest that we just

 6    agree right now that we take this particular provision out

 7    of the CMO so that it doesn't get in the way of entry of a

 8    CMO and that the Government and the Defendants will meet and

 9    confer on this and make a proposal for amendment,

10    essentially, an addendum, whatever one wants to call it, by

11    the end of the week.

12                    THE COURT:  Very well.  So the end of the week.

13    That's tomorrow.

14                    MR. WALL:  It is indeed.

15                    THE COURT:  So do you want me to set a date for

16    you all to come back before me next week if you haven't been

17    able to resolve it?

18                    MR. WALL:  Sure.  That would be great.

19                    THE COURT:  Give me a date when you would like to

20    do it.  I can do it probably any day at 3:00, the same time.

21                    MR. WALL:  I'm just looking at my calendar.

22                    THE COURT:  I can't do it Thursday.

23                    MR. WALL:  Wednesday?

24                    THE COURT:  Wednesday at 3:00 is good.

25                    MR. WALL:  Okay.

1          THE COURT:  The final matter is regarding, I

2     guess, this witness subpoena, the subpoena of witnesses.

3          MR. WALL:  Yes.  This is Dan Wall again.  Let me

4     just very quickly get through this one.

5          So the issue here is that the Government and

6     Defendants will have nationwide subpoena power for trial

7     subpoenas.  That is -- that's provided for in antitrust

8     cases.  And the CMO acknowledges that.

9          The Government wants a provision that says that,

10    notwithstanding that, every witness shall be deemed

11    unavailable for trial within the meaning of the rules that

12    govern the use of depositions.

13         And what that means as a practical matter is that

14    the Government could -- say there's a customer who supports

15    the Government's market definition by saying that it prefers

16    only to deal with the larger brokerage firms, not the rest

17    of the pack.

18         The Government could take that deposition and then

19    just in every case present that as evidence at trial without

20    having the witness actually take the stand and be

21    cross-examined in front of your Honor, which is of course

22    not the norm, particularly in a case like this.

23         You will have other occasions to talk about the

24    merits of this.  But a case like this one in which the

25    Government is defining the market based upon simple customer

1    types and customer preferences and this idea that there's a

2    class of customers that only wants to use certain vendors

3    and not other vendors, the customer testimony is -- plays a

4    very large, outsized kind of role.

5         And therefore, it is important for us in defending

6    this case to be able to decide -- not always, because with

7    the trial days that we're going to have, it's not going to

8    be that easy -- but when we want to, to have a witness

9    appear in front of your Honor in person so that he or she

10   can be cross-examined in person.

11        Now, I'll be the first to acknowledge that with

12   the number of trial days your Honor was able to provide us,

13   we're going to have to compromise that to some degree and

14   just accept the fact that some witnesses are going to come

15   in on deposition only.

16        But it's still very, very important to us to be

17   able to use our judgment as counsel for the Defendants who

18   are the Government's key witnesses, who are the ones that

19   need to come before the Court, and not have that subverted

20   by this blanket rule that everyone is deemed unavailable so

21   you can just use the deposition.

22        That's the dispute, your Honor.

23        THE COURT:  So they'd be deemed unavailable why?

24   Clarify that for me.

25        MR. WALL:  So the Government wants to have

1    language -- so because there's nationwide -- the logic is

2    simply because there's nationwide subpoena power for trial

3    witnesses, everyone is available in the first instance.

4    Right?

5            THE COURT:  Right.

6            MR. WALL:  And because everyone is available, you

7    can't go take the person's deposition and then offer that

8    deposition in your case in chief.

9            And so the Government wants -- is proposing

10   language that says -- that effectively modifies what it

11   means to have nationwide trial service, subpoena power, that

12   notwithstanding that nationwide subpoena power, witnesses

13   who are outside the normal range of 100 miles or whatever it

14   is, you know, will be deemed to be unavailable, and

15   therefore their depositions can be used.

16           That's the issue.

17           THE COURT:  Okay.  I got you.

18           Let me give the court reporter a five-minute

19   break.  We'll take a five-minute recess.

20           MR. WALL:  Thank you, your Honor.

21           (Thereupon a recess was taken, after which the

22   following proceedings were had:)

23           THE COURT:  Are we ready?

24           MR. JONES:  Yes, your Honor.

25           MR. WALL:  Yes, your Honor.  I am.

1      THE COURT:  Let me hear from Government counsel

2    and whether you agree that you might do or seek to try and

3    do what's being suggested.

4      MR. JONES:  Bill Jones for the United States, your

5    Honor.

6      No.  We would not do what Defendants are

7    suggesting here.

8      And, your Honor, I would note that the language

9    we've proposed relating to the nationwide service of process

10   paragraph in the CMO that we're proposing, your Honor,

11   that's relatively standard language in CMOs in merger cases.

12      This isn't something that we've come up with just

13   for this case or isn't normally in use.

14      And I would also point out, your Honor, that,

15   contrary to the suggestion otherwise, it's not true that

16   there's no bounds on what would deem a witness as

17   unavailable.  Our language clearly says, pursuant to --

18   sorry; let me make sure I get this right -- "does not make a

19   witness who is unavailable for the purposes of Rule 32 and

20   Rule of Evidence 804 available."

21      So, your Honor, all this is saying is that

22   because we had nationwide service of process, it doesn't

23   mean that if someone is unavailable under Rule 32, say, they

24   had a deposition and we took it, both sides were present,

25   and between the time of their deposition and the time of

1    trial, that person became sick and couldn't come to trial,

2    the presence of nationwide service of process does not mean

3    that the Court can't get the testimony from that person

4    because they're now unavailable.

5          But the Defendants' provision says:  Well, you

6    have nationwide service of process, so tough luck.  They are

7    available under that provision.

8          Your Honor, all we're doing here is incorporating

9    nationwide service of process with the other existing rules

10   for unavailability.

11         And, your Honor, lastly on this point, I would

12   just say, given that we're talking about trial days around

13   the holidays here, I think for both sides it's incumbent to

14   try to exercise some flexibility here in how we're able to

15   put on our cases in terms of witnesses that will be able to

16   testify live and witnesses who may have to be put in through

17   deposition just as the nature of the schedule that we have

18   and the calendar that we're facing here.

19         THE COURT:  Does that resolve defense counsel's

20   concern?  I mean, let me just say, you know, we do have

21   modern technology.  And I conducted a criminal case and we

22   had several witnesses who were over in Liberia and they were

23   unable to get here and we were able to take their testimony

24   by videoconferencing.  And I've had -- since we've had the

25   pandemic, I've done at least one hearing where I had

1    witnesses who appeared remotely.  And I must say, my ability

2    to assess credibility was not in any way compromised by

3    having that testimony presented to me by videoconferencing

4    as compared to the witness actually being in the courtroom.

5              So to the extent that we're talking about holidays

6    and people maybe having plans that would make it difficult

7    for them to come to D.C., that would not necessarily mean

8    that I would only be able to rely upon deposition testimony.

9    If they from where they are are able to participate by

10   videoconferencing, I can take the testimony in that form

11   also.

12             But again, does what Government counsel said allay

13   the concerns that you have?

14             MR. WALL:  This is Dan Wall again.

15             So not really, for this reason, your Honor:  Look,

16   already, Rule 32(a)(4) says without any changes or

17   amendments in our CMO that when witnesses are unavailable,

18   you can use the deposition for any purpose if a person can't

19   testify because of age, illness, infirmity or imprisonment,

20   et cetera, and that the Court also can find that there's

21   exceptional circumstances that make it desirable in the

22   interest of justice, et cetera.  So all of those things that

23   he is talking about are fully covered by Rule 32 already.

24             And so I do wonder:  What's being added here?

25   What's being added here is simply the ability to state that

1    categorically witnesses are unavailable.  So categorically,

2    their deposition can be used.

3         I am 100 percent with your Honor that in many of

4    these cases, if travel is the issue or something like that,

5    that a video deposition or something like that would be the

6    answer because that still allows us to cross-examine the

7    witness in front of your Honor.

8         What I am -- all I am trying to avoid here is a

9    change in the regular rules that give the Government this

10   unrestricted right to use as if they were present at trial

11   the deposition of anyone whose deposition is taken in this

12   case.

13        THE COURT:  Well, if Government counsel said he's

14   not trying to in any way change the norm of when a witness

15   is unavailable, then I would tend to agree that that

16   modification need not be included and something to the

17   effect that unavailability would be unavailability in the

18   normal perspective of the term.

19        So if the witness -- as I say, if they're

20   otherwise available, even if they're outside of the area and

21   they can't get here, I can hear their testimony by

22   videoconferencing.

23        MR. WALL:  That works for us, your Honor.  This is

24   Dan Wall.

25        THE COURT:  Government?

1          MR. JONES:  Your Honor, no objection from the

2    United States.  This is Bill Jones.

3          THE COURT:  Okay.  Anything else?

4          MR. WALL:  No, your Honor.  Thank you very much

5    for your time.

6          MR. JONES:  Nothing further from the United

7    States, your Honor.

8          THE COURT:  That's why they pay me the big bucks.

9    Thank you.

10          MR. WALL:  Thank you.  Have a good day.

11          MR. JONES:  Have a good day, your Honor.

12          (Proceedings concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          **<u>CERTIFICATE</u>**

2

3                     I, LISA EDWARDS, RDR, CRR, do hereby

4       certify that the foregoing constitutes a true and accurate

5       transcript of my stenographic notes, and is a full, true,

6       and complete transcript of the proceedings produced to the

7       best of my ability.

8                          Please note:  This hearing occurred

9       during the COVID-19 pandemic and is therefore subject to the

10      technological limitations of reporting remotely.

11

12                         Dated this 15th day of July, 2021.

13

14                   /s/ Lisa Edwards, RDR, CRR
                     Official Court Reporter
15                   United States District Court for the
                       District of Columbia
16                   333 Constitution Avenue, NW, Room 6706
                     Washington, DC 20001
17                   (202) 354-3269

18

19

20

21

22

23

24

25